125 So.2d 613 (1961)
BLUE RIBBON CLEANERS
v.
AETNA CASUALTY & SURETY CO.
No. 21366.
Court of Appeal of Louisiana, Fourth Circuit.
January 3, 1961.
*614 Bienvenu & Culver, James C. Murphy, Jr., New Orleans, for plaintiff-appellant.
Adams & Reese, George V. Baus, New Orleans, for defendants-appellees.
YARRUT, Judge.
Plaintiff appeals from a judgment dismissing its suit for (property) damage to its truck, resulting from an intersectional collision with a truck of defendant, C. & D. Service, Inc. Defendants (by original and supplemental petition) are the truck owner and its liability insurer. Reference to "defendant" in the singular will be to the insured truck owner only.
The situs of the collision was the intersection of Airline Highway (U. S. 61) and LaBarre Road in Jefferson Parish. Plaintiff's truck entered the intersection from LaBarre Road and defendant's truck was traveling on Airline Highway.
Plaintiff charges that defendant's negligence was the proximate cause of the accident because defendant failed to keep a proper lookout; failed to yield the right-of-way to its truck which had preempted the intersection; failed to allow its truck to clear the intersection before entering the intersection from a stopped position at a red traffic signal light; anticipated and "jumped" the green signal light; failed to use proper care and caution to keep its vehicle under proper control.
Defendants filed a general denial, pleaded the negligence of plaintiff in traveling at an excessive rate of speed; failure to keep a proper look-out; failure to observe and stop in obedience to the red traffic signal facing traffic on LaBarre Road; then, alternatively, pleaded the contributory negligence of plaintiff. Plaintiff's truck suffered $800.40 damage; defendant's truck none.
The Airline Highway at the intersection consists of four westbound and four eastbound lanes, separated by a ten-foot wide neutral ground. LaBarre Road contains two lanes, one northbound and one southbound. The intersection is controlled by two traffic signal lights, one suspended over each set of four lanes of the Airline Highway at a height of 15 feet.
Plaintiff's truck was proceeding south towards the River, on LaBarre Road. Defendant's truck was traveling in the fourth lane from the neutral ground on the Airline Highway, headed towards New Orleans. To its immediate left was a large refrigerator truck; and to the left of the truck were vehicles using the other two lanes. All four were stopped at LaBarre Road waiting for the red traffic signal to turn green.
Plaintiff's driver alone testified in its behalf. Defendant's driver, his passenger, a State Trooper, and a witness to the accident were called by defendant.
Plaintiff's driver stated he entered the intersection on a green light but, after entering the intersection, was unable to see *615 the signal lights because they were directly overhead. As he passed the neutral ground, the large refrigerator truck to defendant's left started to move through the intersection. He promptly sounded his horn and the refrigerator truck stopped. Since no vehicle was approaching in the fourth, or defendant's, lane of traffic, he continued on. Suddenly, defendant's truck entered the intersection and struck his truck. His first knowledge of the presence of defendant's truck was upon the impact. The front of defendant's truck struck the right rear side of plaintiff's truck, resulting in plaintiff's truck being forced into the front of a car stopped on LaBarre Road, south of Airline Highway.
Defendant's driver relates: That he was stopped at the intersection waiting for a signal light to change from red to green. A large refrigerator truck to his immediate left made it impossible for him to see plaintiff's truck. When the traffic light changed to green the refrigerator truck started forward, so he followed suit. A horn blew and the refrigerator truck stopped after moving five feet into the intersection; defendant also stopped but only after his truck extended about one foot in front of the refrigerator truck. While so stopped, plaintiff's truck passed in front, barely making contact with him, but swerved and crashed into another vehicle.
Defendant's passenger and the witness to the accident give us no light. However, the State Trooper, who investigated the accident, stated a driver proceeding through the neutral ground break could not see the overhead signal light change; but was not sure whether a motorist, crossing the Airline Highway from LaBarre Road could safely stop in the ten-foot neutral ground break when the light turned amber before completing the crossing. He did state that, on some occasions, it would be advisable to continue across the highway even though the light turned red before completion; and that the light is green for LaBarre Road for so short a time that many motorists, though properly starting on a green light, are caught in a change to red before completing the intersection.
Plaintiff's driver had proceeded to the middle of the intersection on a green light, which then turned red. As the State Trooper testified, on some occasions it is advisable for an automobile to continue across the highway notwithstanding the change, because a stop in the neutral ground area might leave the automobile protruding into the Highway.
As plaintiff's driver blew his horn to warn defendant and the other motorists that he would continue through the intersection, his continuing through was not negligent. The fact that three of the four vehicles, waiting at the red light, heeded his warning and allowed plaintiff's truck time to clear the intersection, but defendant's driver did not, is positive evidence that defendant's driver was not keeping a proper lookout and alone was responsible for the collision.
Defendant's driver heard plaintiff's horn, but said he did not know from what direction it came. It was his duty to heed and wait. Instead, he blindly followed the lead of the refrigerator truck to his left, when it started into the intersection, but was unable to stop, along with the refrigerator truck, when the latter, seeing plaintiff's truck proceeding through the intersection, did so to permit its passing.
If a motorist, entering an intersection properly on a green traffic light and proceeding lawfully through it, must do so at his peril, then traffic signals cease to be safety signals and become traffic traps.
The rule charging negligence to vehicles entering an intersection on an unfavorable signal light cannot be invoked against plaintiff, since plaintiff's driver entered properly on a green light. However, the rule that a motorist must not enter an intersection after a red light turns green, until sufficient time is allowed for cross traffic to clear, must be invoked against defendant. *616 Schindler v. Gage, La.App., 59 So.2d 215.
For the reasons assigned, the judgment of the District Court is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Blue Ribbon Cleaners, and against defendants, Aetna Casualty and Surety Co. and C. & D. Service, Inc., jointly and in solido, in the full amount of $800.40, together with legal interest thereon from date of judicial demand until paid; defendants to pay all costs in both courts.
Reversed and rendered.